UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAPITAL MARKETS TRADING GROUP, LLC, | CIVIL ACTION NO. 3:02cv318(AVC) |
| Plaintiff, | |
| v. | |
| AIG INTERNATIONAL (BVI) LIMITED, | |
| Defendant. | MARCH 9, 2004 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY DELMER C. GOWING, III, AS PLAINTIFF'S COUNSEL IN THIS ACTION

#### Preliminary Statement

Defendant AIG International (BVI) Limited ("AIG") respectfully submits this memorandum in support of its motion pursuant to Rule 83.13 of this Court to disqualify Delmer C. Gowing, III, ("Gowing") from participating in further proceedings in this action as counsel for Plaintiff Capital Markets Trading Group, LLC ("CMTG").[1]

At his deposition on February 26, 2004, Gowing testified that he is now the *only* corporate representative of CMTG and will be the *only* CMTG witness in this action with personal knowledge concerning CMTG's claim. Gowing's role as both counsel and central witness cannot continue. Gowing is not simply a minor witness called upon to testify as to a non-controversial matter; his testimony is crucial to CMTG's case and is hotly disputed by AIG. Moreover, discovery is revealing relevant issues concerning Gowing's own conduct and credibility and, in light of the fact that he is CMTG's only

---

[1] Plaintiff is also represented in this action by the firm of Willinger, Willinger & Bucci, P.C.

witness, will continue to focus on such matters. It is therefore inappropriate for Gowing to continue as counsel – such a dual role is prohibited by Rule 83.13 of this Court's rules.

## Background[2]

### A. Gowing Is A Central Witness In This Action, And The Primary, If Not Sole, Witness On The Threshold Issue.

This case has been narrowed to a single claim of negligent misrepresentation.[3] According to CMTG, it entered into a $12 million agreement with MFCL (and its trader, Raj Patel) on November 1, 2000, because AIG personnel allegedly told CMTG in telephone calls that MFCL's trader was, among other things, "trustworthy" and an "experienced" trader. See Ex. A (Complaint ¶¶ 8-12). While CMTG's claim will fail for a number of reasons, including CMTG's failure to establish reasonable reliance and other necessary elements of a negligent misrepresentation claim, CMTG must, as a threshold matter, establish that the alleged representations were in fact made.

To establish that the alleged statements were made, CMTG originally indicated that it would offer testimony from Gowing and its president Tony O'Brien ("O'Brien") concerning two telephone conversations. The Complaint states:

> Tony O'Brien, President of CMTG, … called Ann Reed [at AIG] who [made certain statements concerning Raj Patel.]
> …

---

[2]  Pertinent pleadings, testimony and documents are attached hereto as Exhibits A-I, and are cited herein as "Ex. __."

[3]  The Court has dismissed the balance of the Complaint for failure to state a claim. See Order dated December 23, 2002.

>Mr. O'Brien and counsel for CMTG, Delmer C. Gowing
>III, contacted the other reference, Ludo Candon [at AIG],
>who [made certain statements concerning Raj Patel].

Ex. A (Complaint ¶¶ 8-12).  In answers to interrogatories, CMTG again referred to the two telephone calls and confirmed that the two witnesses for CMTG would be O'Brien and Gowing.  See Ex. B (Interrogatory Answers 14 & 15).

Although CMTG claims it relied exclusively on these telephone calls in deciding to proceed with a $12 million transaction with MFCL, CMTG has produced no contemporaneous written documentation concerning the alleged statements in these telephone calls.  Gowing, who claims he is an experienced securities lawyer and was conducting due diligence for CMTG through these calls, has not produced any contemporaneous notes, emails or other documentation concerning his testimony of what was allegedly stated.  CMTG's assertions regarding the content of the telephone calls is thus uncorroborated.

On February 26, 2004, Gowing appeared for a deposition as CMTG's representative in response to a Rule 30(b)(6) notice of deposition, and claimed that he was the sole current representative of CMTG.  See Ex. C (Gowing Deposition at 8, 12).[4]  He acknowledged that he intended to testify as to critical matters that could not be established by any other CMTG witness, even if O'Brien were to testify.  See id. at 18-

---

[4] In response to a Notice of Depositions of representatives of CMTG, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure dated January 14, 2004, Gowing wrote to AIG's counsel, claiming that O'Brien was "no longer part" of CMTG, and would not appear for a deposition as a representative of CMTG.  Gowing and his co-counsel, Mr. Bucci, further stated that they would not represent O'Brien at his deposition, nor would they accept service of a subpoena on his behalf.  Defendant has subpoenaed O'Brien and he is scheduled to appear for a deposition on March 18 and 19, 2004.

19, 27. Further, Gowing testified that O'Brien had made numerous statements to him and AIG that were false or misleading. See, e.g., id. at 95-108. Gowing also claimed that O'Brien had told him, belatedly, that he was a convicted felon. See id. at 96. Gowing's testimony makes it unlikely that CMTG will proffer O'Brien as a credible witness on any issue in this case.

Gowing's efforts to marginalize O'Brien's role in this case extended even to the key telephone call that CMTG previously alleged was made by O'Brien to AIG. Gowing now claims that the credibility of O'Brien's testimony concerning his telephone calls is not relevant because Gowing himself was a witness to one of O'Brien's calls. According to Gowing, he surreptitiously listened to a telephone call by O'Brien to AIG, concealing his presence by pushing a "mute" button. See Ex. C at 116. This testimony cannot be easily accepted because no such claim has been made previously by CMTG.[5] Indeed, this illustrates the extent to which Gowing has vaulted himself to the role of plaintiff's key witness in this case.

Hence, it is beyond peradventure that Gowing will be the primary, if not sole, fact witness for plaintiff.

### B. Gowing's Additional Problems Of Credibility And Personal Exposure.

The question of Gowing's credibility has become all the more significant given O'Brien's purported lack of credibility and Gowing's vaulted prominence in this case as

---

[5] In the Interrogatory Answers signed by Gowing on behalf of CMTG, CMTG identified only one communication involving O'Brien and AIG, and did not claim that Gowing was a witness to that call. See Ex. B (Interrogatory 14). At his deposition, Gowing claimed that O'Brien made a second telephone call in which the same AIG personnel made similar statements, and that Gowing surreptitiously participated in that second call. See Ex. C at 116.

CMTG's only witness as to a disputed oral communication.  Although discovery is continuing, it appears that Gowing's conduct and statements raise questions concerning significant facts in this case.

Prior to filing the complaint, Gowing wrote a letter to AIG claiming that Patel had "stolen $10 million" from CMTG (see Ex. D (letter dated August 28, 2000); after probing further, Gowing acknowledged that, of the original $12 million provided by CMTG, $2.78 million had been returned to CMTG by MFCL in January 2001 and, after AIG had stopped doing business with MFCL, MFCL wire transferred another $3.18 million to CMTG on April 3, 2001, through Gowing's IOTA attorney trust account (rather than to CMTG's account directly).  See Ex. E (Gowing letter dated October 2, 2001).  When AIG inquired as to whether any additional funds were sent, directly or indirectly, from MFCL to CMTG or to Gowing, Gowing denied receiving any other amounts.  See Ex. F (Gowing letter dated October 11. 2001 ("[t]he only transfer I received into my trust account or any other account was the $3.18 million"); see also Exs. G & H (Gowing letters dated October 23 & 31, 2001).  When Gowing filed a complaint in Florida State Court, which he signed as counsel, CMTG claims that it sent "$12,000,000," then received "$2,800,000" in January, then received "only $3,180,000" from Patel, and thus "lost the principal amount of $6,020,000."  See Ex. I (Florida Complaint ¶¶ 9, 11, 13, 14, 17, 22).  When CMTG filed a new complaint in this Court after the case was removed and transferred from Florida, it repeated the same allegations.  See Ex. A (Connecticut Complaint ¶¶ 18, 21, 23, 25, 64).

During discovery in this action, however, it has become clear that Gowing's prior statements to this Court and AIG on behalf of CMTG were inconsistent. In interrogatory answers signed by Gowing on behalf of CMTG, CMTG acknowledged the existence of two additional wire transfers to Gowing's bank accounts; one for $500,000 and the other for $47,357.25. See Ex. B (Interrogatory Answer 14).[6] Of those amounts, Gowing claims to have forwarded to CMTG approximately $400,000 from the first wire, and approximately $37,000 from the second wire. The $500,000 wire came to Gowing's personal business account, not his IOTA attorney trust account. The second wire came to Gowing's IOTA attorney trust account only weeks before he wrote to AIG that he had not received any additional wire transfers. Id.[7]

Gowing has proffered an explanation for his past non-disclosure of the $500,000 wire that strains credulity. Gowing claims the $500,000 wire transfer was not disclosed to the Court and AIG because, in his view, the wired funds were "not the property of MFCLCrude, Petkar or Patel," and "not a return of [CMTG's] money." Id. He claims the $500,000 was sent to him by a "client" of Raj Patel to be used by Gowing personally as "interim financing for the purchase of a home." Id. In other words, this was a transfer of funds, through a middle-man "client" of Raj Patel and "attorney" for CMTG, under the guise of a "loan."

---

[6] Discovery also has revealed that, several months after CMTG entered into an initial agreement with MFCL, Gowing personally entered into an agreement directly with MFCL, allegedly replacing the agreement between CMTG and MFCL. See Ex. C at 253-260.

[7] Gowing testified that certain funds were returned to CMTG by MFCL, and then disappeared, suggesting that we question O'Brien on that subject. See Ex. C at 141.

Gowing would have the Court believe that a complete stranger – a person that Gowing cannot even identify by name – loaned him $500,000. Gowing cannot substantiate the purported loan with any documentation. See Ex. C at 50-52. He concedes that there was no promissory note, other loan documentation or even written communications concerning this loan, other than the wire transfer account record itself. Id. More remarkably still, Gowing claims that, although he describes this loan as "interim financing," Gowing did not repay any portion of the loan (or pay any interest) to the Patel "client" in the years since the funds were transferred to Gowing in 2001. Id.

Gowing's own testimony calls into question the newly-minted explanation for failing to disclose the return of the $500,000. Gowing testified that, after receiving the funds, he discussed the matter promptly with O'Brien, and then sent a portion of the $500,000 to CMTG's account in Ohio (i.e., approximately $400,000) because he concluded that these were likely CMTG funds. Id. at 52-53; Ex. B (Interrogatory Answer 14). If Gowing believed that the funds were truly a loan from a Patel client to Gowing personally for a house purchase, then sending most of the funds on to CMTG as funds from MFCL would be remarkable. In any event, even if only $400,000 was returned to CMTG through Gowing's account, then Gowing and CMTG should have disclosed the return of the $400,000 in its pleadings and in computing its losses.

As for the remaining funds (i.e., approximately $100,000), Gowing testified that he did not forward those funds to CMTG and continues to hold those funds. Ex. C at 53-54. It would appear, then, that Gowing received a wire transfer to his personal account and did not forward the funds to CMTG, with the result that CMTG repeatedly has

overstated the damages being claimed against AIG even though Gowing personally received these amounts.[8]

**Argument**

**GOWING CANNOT CONTINUE AS COUNSEL IN THIS ACTION**

Rule 83.13 prohibits an attorney from serving as counsel and witness in a litigation pending in this Court, subject to certain narrow exceptions that are inapplicable here.[9] Rule 83.13 states in relevant part:

> A lawyer shall not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness....

Given the undisputed facts detailed above, it is inconceivable that Gowing can be permitted to continue to participate in this action as CMTG's counsel under Rule 83.13. Gowing "ought to be called as a witness" in this action and, based on Gowing's sole testimony, it is clear that he will be the sole corporate representative of CMTG and its primary, if not sole, witness at trial.

---

[8] Gowing has offered no explanation for failing to disclose the $47,000 wire. Nor has he provided a cogent justification for keeping $10,000 of that wire for himself. Gowing has suggested that he applied the amount to cover the expenses of a trip to visit Raj Patel in London. See Ex. C at 261-62. But Gowing also claimed that he was not charging CMTG any fee as a lawyer in connection with his work for CMTG, and Gowing has not produced documentation confirming that his travel and hotel expenses for one trip to London amounted to $10,000.

[9] The circumstances of this action do not fit within any of the exceptions. Rule 83.13 provides that a lawyer may serve as witness and counsel in an action only if his or her testimony relates (a) "solely to an uncontested matter," (b) "solely to a matter of formality" (where "there is no reason to believe that substantial evidence will be offered in opposition to the testimony") or (c) "solely to the nature and value of the legal services rendered in the case by the lawyer or law firm to the client." See Rule 83.13(a)(1), (2) and (3). On all disputed matters, including his testimony concerning the telephone calls, Gowing does not qualify under these narrow exceptions.

The prohibition on counsel continuing in a dual role is mandatory, subject to two exceptions set forth in Rule 83.13 that are not applicable here. First, disqualification is not mandatory if a lawyer is not being called as a witness on behalf of his client. See Rule 83.13(b)(2). Here, however, Gowing is being called as a witness on behalf of his client. Second, under Rule 83.13(c), if another lawyer in the witness lawyer's law firm may be able to serve as counsel, the firm as a whole is not disqualified. Under this exception the law firm may be able to continue as counsel, but the witness-lawyer himself may not participate under any circumstances. Hence, this exception does not provide a basis for Gowing to continue as counsel in this case.[10]

This action exemplifies several of the reasons underlying the adoption of the rule. First, it is difficult to interact with opposing counsel for pretrial purposes where the attorney is also the opposing party's primary witness, whose credibility and testimony on pivotal matters is at issue. Second, Gowing's interests and those of CMTG's interests may be in conflict. Due to Gowing's conduct toward the entity, including the potential that he diverted funds from CMTG, he may have personal exposure to CMTG.

Under the circumstances, Gowing's continuing as counsel in these proceedings in this action is contrary to the prohibitions of Rule 83.13. See, e.g., Seth Co. v. United States, No. 3:01CV01584(PCD), 2002 WL 31959105 at *1-3 (D. Conn. Nov. 26, 2002) (granting motion to disqualify under Local Rule 33(c), the predecessor to Rule 83.13);

---

[10] Gowing is a sole practitioner with offices located in the State of Florida who has been admitted pro hac vice in this action. We also note parenthetically that, at his deposition, Gowing advised that he is closing his law practice. See Ex. C at 63-65.

Butterworth v. Citicorp Mortgage, Inc., No. CIV. A. 300CV413(CFD), 2000 WL 1901314 at *1-2 (D. Conn. Dec. 20, 2000) (same).

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court grant defendant's motion to disqualify Gowing from serving as Plaintiff's counsel in any further proceedings in this action.

        DEFENDANT,
        AIG INTERNATIONAL (BVI) LIMITED

        By /s/ Edward J. Heath
           Edward J. Heath
           Federal Bar # ct20992
           ROBINSON & COLE, LLP
           280 Trumbull Street
           Hartford, CT  06103-3597
           Telephone:  (860) 275-8200
           Facsimile:  (860) 275-8299

           Andrew J. Levander
           Louis M. Solomon
           Adam B. Rowland
           SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
           The Chrysler Building
           405 Lexington Avenue
           New York, New York   10174
           Telephone:  (212) 973-0111

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed via federal express, postage prepaid, on this 9th day of March, 2004, to:

| | |
|---|---|
| Thomas W. Bucci | Delmer C. Gowing, III |
| Willinger, Willinger & Bucci | 101 SE 6th Avenue |
| 855 Main Street | Delray Beach, FL  33483 |
| Bridgeport, CT  06604 | |

          /s/ Edward J. Heath
          Edward J. Heath